**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

PAUL GLEITZ, ELLE GOODRICH, and
RICHARDO SABATER, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

vs.

AMERICAN JOURNEY (PET), LLC, and
CHEWY, INC.,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

    Plaintiffs Paul Gleitz, Ricardo Sabater, and Elle Goodrich (collectively, "Plaintiffs"), acting on behalf of themselves and all others similarly situated ("Class Members"), by and through their undersigned attorneys, brings this class action for damages and equitable relief against Defendants American Journey (PET), LLC, and Chewy, Inc. (collectively, "Defendants").

## NATURE OF THE CASE

    1.    Dogs can—and often do—have allergic reactions to certain pet foods, including those that contain wheat. For this reason, concerned consumers, including Plaintiffs and Class Members, avoid purchasing pet foods that include this problematic ingredient.

    2.    Consumers willingly pay a premium for limited ingredient pet foods for the health and well-being of their pets.  Defendants' American Journey Grain-Free Lamb & Sweet Potato Recipe, American Journey Grain-Free Beef & Sweet Potato Recipe, and American Journey Grain-Free Salmon & Sweet Potato Recipe claim to be limited ingredient, grain-free pet foods (collectively the "Grain-Free Products").

3.      Consumers, including Plaintiffs and Class Members, rely on Defendant's representations that the Grain-Free Products include only limited ingredients and specifically do not include grains, are specifically formulated for the health needs of dogs, that the Grain-Free Products meet its own ingredient promises and warranties, and that the Grain-Free Products adhere to quality and manufacturing standards.

4.      However, Plaintiffs' independent analysis of the Grain-Free Products found that they contain significant and material amounts of wheat, *i.e.*, amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

5.      Accordingly, Plaintiffs bring this lawsuit seeking redress on behalf of themselves and those similarly situated for the Defendants' violation of the Magnusson-Moss Warranty Act, breach of warranties, unjust enrichment, and violation of Florida's Unfair and Deceptive Trade Practices Act.

## **PARTIES**

6.      Plaintiff Paul Gleitz is a citizen of Missouri residing in New Haven, Franklin County, Missouri.

7.      Plaintiff Ricardo Sabater is a citizen of Florida residing in Springhill, Hernando County, Florida.

8.      Plaintiff Elle Goodrich is a citizen of Tennessee residing in Manchester, Coffee County, Tennessee.

9.      Defendant American Journey (PET), LLC, is a limited liability company that is existing under the laws of the State of Delaware and has its principal address located at 1855 Griffin Road, Suite B-428, Dania Beach, Florida 33004.  Defendant American Journey directs the formulation, production, quality control, marketing, sales, and distribution of the Grain-Free Products in Florida and throughout the United States, including in Missouri and Tennessee. Upon information and belief, the sole member of Defendant American Journey is Defendant, Chewy, Inc.

10.     Defendant Chewy, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business and National Headquarters located at 1855 Griffin Road, Suite B-428, Dania Beach, Florida 33004. Defendant Chewy, Inc. distributes, markets, sells, and directs the marketing and selling of the Grain-Free Products in Florida and throughout the United States, including in Missouri and Tennessee.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 Members in the proposed Class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the Members of the proposed Class are citizens of states different from Defendants.

12.     Defendants have sufficient minimum contacts with Florida to be subject to this Court's personal jurisdiction. Defendants have chosen to locate their headquarters in Florida, intentionally avail themselves of the markets within Florida through the promotion, sale, marketing, and distribution of Grain-Free Products and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because both Defendants are headquartered within this District.

## FACTUAL ALLEGATIONS

**Plaintiff Paul Gleitz**

14.     Plaintiff Gleitz purchased the Grain-Free Products on a monthly basis in 2017. Specifically, he purchased the Beef & Sweet Potato Recipe and Salmon & Sweet Potato Recipe from a PetSmart in Washington, Missouri.

15.     Plaintiff Gleitz lives on a horse farm and purchasing high quality dog food is extremely important to him to keep his dogs in shape and healthy.  He purchased the Grain-Free Products for his German Shepherds and Weimaraner dogs specifically because they are grain-free.

Plaintiff Gleitz read and relied upon the "no wheat" and "grain-free" representations on the packaging of the Grain-Free products when deciding which food to purchase for his dogs.

16.     Although the Grain-Free Products were more expensive than other choices he considered, Plaintiff Gleitz chose to pay the premium price based upon the "grain-free" and "no wheat" representations, as well as other promises made by Defendants on their product packaging.

17.     At the time of all his purchases, Plaintiff Gleitz relied on Defendants' factual representations about the ingredients in the Grain-Free Products dog food, including those representations on the product label. The representations consistently and uniformly indicated that the Grain-Free products are "grain free" and do not contain wheat.

18.     Plaintiff Gleitz stopped purchasing the Grain-Free Products because his dogs had digestive issues after consuming them. Specifically, on multiple occasions, both dogs exhibited digestive issues shortly after consuming the Grain-Free Products.

19.     Plaintiff Gleitz did not receive the benefit of his bargain when he purchased the Grain-Free products, as they included ingredients that did not conform to the Grain Free Products' packaging representations and the warranties made by Defendants. Had he been aware of Defendants' misrepresentations, he either would have not purchased the Grain-Free Products or would have paid less for them.

**Plaintiff Ricardo Sabater**

20.     Plaintiff Sabater purchased the Grain-Free Products three times a month from April 2020 to September 2020. Specifically, Plaintiff Sabater purchased the Beef & Sweet Potato Recipe from PetSmart in Springhill, Florida.

21.     Plaintiff Sabater purchased the Grain-Free Products for his Doberman Pinschers, Rico and Echo. Plaintiff Sabater read and relied upon the "no wheat" and "grain-free" representations on the packaging of the Grain-Free Products when deciding which food to purchase for his two dogs.

22.     Although the Grain-Free Products were more expensive than other choices he considered, Plaintiff Sabater chose to pay the premium price based upon the "grain free" and "no wheat" representations, and other promises made by Defendants on their product packaging.

23.     At the time of each of his purchases, Plaintiff Sabater relied on Defendants' factual representations about the ingredients in the Grain-Free Products dog food, including those representations on the product label. The representations consistently and uniformly indicated that the Grain-Free Products are "grain free" and do not contain wheat.

24.     Plaintiff Sabater stopped purchasing the Grain-Free Products because both of his dogs had digestive issues and adverse issues with their fur after consuming the Grain-Free Products. Specifically, on multiple occasions, both dogs exhibited patches on their fur and had diarrhea shortly after consuming the Grain-Free Products. As a result of these reactions, Plaintiff Sabater took his dogs to the veterinarian and spent $150.00 to evaluate their symptoms.  After the visit to the veterinarian and after switching to a Blue Buffalo dog food product, both conditions for both dogs ceased within 2 weeks' time.

25.     Plaintiff Sabater did not receive the benefit of his bargain when he purchased the Grain-Free Products, as they included ingredients that did not conform to their packaging representations and the warranties made by Defendants. Had he been aware of Defendants' misrepresentations, he either would have not purchased the Grain-Free Products or would have paid less for it.

**Plaintiff Elle Goodrich**

26.     Plaintiff Goodrich purchased the Grain-Free Products once a month from March 16, 2020 to January 2021. Specifically, Plaintiff Goodrich purchased the Beef & Sweet Potato Recipe at a PetSmart in Tullahoma, Tennessee. On January 7, 2021, Plaintiff Goodrich paid $42.99 plus tax for the Beef & Sweet Potato Recipe from PetSmart.

27.     Plaintiff Goodrich purchased the Grain-Free Products for her Labrador Retriever, Grimm, who is 10 years old. Plaintiff Goodrich read and relied on the no wheat, grain-free

representations on the package labels of the Grain-Free Products when deciding which food to purchase for her dog.

28.     Although the Grain-Free Products were more expensive than other choices she considered, she chose to pay the premium price based upon the "grain free" and "no wheat" representations, and other promises made by Defendants on its product packaging.

29.     At the time of each of her purchases, Plaintiff Goodrich relied on Defendants' factual representations about the ingredients in the Grain-Free Products dog food, including those representations on the product label. The representations consistently and uniformly indicated that the Grain-Free Products are "grain free" and do not contain wheat.

30.     Plaintiff Goodrich did not receive the benefit of her bargain when she purchased the Grain-Free Products, as they included ingredients that did not conform to their packaging representations and the warranties made by Defendants. Had she been aware of Defendants' misrepresentations, she either would have not purchased the Grain-Free Products or would have paid less for it.

**Academic Research Regarding the Pet Food Industry**

31.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of label claims with respect to the ingredients present in dog foods.

32.     In December 2014, a study conducted by Ming-Kun Hsieh, *et al.* ("Hsieh Study"), determined that only 18% of the dog food samples they tested completely matched the label claims regarding the content of animal by-products. In other words, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 study hypothesized that raw materials used in the preparation of the canned dog food products contained multiple protein types and may have contributed to contamination.[1]

---

[1] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5): 1659-65 (completed December 31, 2014).

33.     In 2016, another study, conducted by Kayo Kanakubo, *et al.* ("Kanakubo Study"), looked into the issue of whether vegan pet food contained non-conforming mammalian ingredients.[2] Vegan pet foods should contain no mammalian proteins or ingredients. Yet, the Kanakubo Study found that half of the pet foods tested contained non-conforming mammalian DNA and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

34.     By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in the study conducted by Rebecca Ricci, *et al.* ("Ricci Study"), the ingredients of only 10 products correctly matched their labels.[3] Of the remaining 30 products, 5 did not contain the declared animal species as ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. According to the Ricci Study, mislabeling is an especially widespread problem in pet foods used for "elimination diets" (i.e., used to investigate food allergies). The Ricci Study researchers went on to suggest that manufacturers should pay particular attention to both, the selection of raw material suppliers and the production processes for pet food, due to the high risk of contamination.

35.     A second 2018 study (conducted in Europe) by Elena Pagani, *et al.* ("Pagani Study"), tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the products.[4] The Pagani Study also referenced the fact that other peer-reviewed studies have found that 80% of the dry foods analyzed contained non-

---

[2] *See* K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition, 2017 Feb; 101 (1): 70–74 (March 3, 2016).

[3] *See* Rebecca Ricci, *et al.*, *Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis,* BMC Veterinary Research Volume 14, Article number: 209 (2018).

[4] *See* Elena Pagani, *et al.*, *Cross-contamination in canine and feline dietetic limited-antigen wet diets*, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

conforming products. The Pagani Study researchers suggest that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control practices in the pet food industry, and opine that the pet food industry has a legal obligation to produce safe food for consumers. Further, the Pagani Study researchers hypothesize that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

36.     In 2018, a third study conducted by Thierry Olivry, *et al*. ("Olivry Study"), summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing. The Olivry Study researchers concluded that the mislabeling of pet food appears rather "common" in limited ingredient diet products that are proposed for elimination diets.[5] They also found that unexpected added ingredients are more frequently detected than those missing from the label.

37.     In sum, since 2014, virtually all scholarly researchers have determined that pet food, including dog food in particular, sold to consumers frequently contains non-conforming ingredients, and that significant discrepancies between the products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

### Defendants' Material Misrepresentations

38.     Dog foods vary in their quality of ingredients, formulas, manufacturing processes, and inspection quality. Dog owners who purchase "grain-free" products pay a premium in order to alleviate their dogs' allergies or to provide various health benefits associated with a grain-free diet. Notably, food allergies are more common among certain dog breeds than others.

---

[5] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22; 14(1):24 (January 22, 2018).

39.     In addition, dog owners are willing to pay a premium for dog food containing premium ingredients. Dog owners who do so expect the dog foods that are advertised as containing premium ingredients to conform to the ingredients listed on their packaging.

40.     Accordingly, Defendants' misrepresentations regarding the ingredients in the Grain-Free Products are material to consumers who purchase these products instead of products that cost less, but do not claim to be made from select or premium ingredients. The Grain-Free Products are sold for in excess of $40 for each 24 lb. bag of dog food.

41.     Inclusion of the phrase "Grain-Free" in the product names for the Grain-Free Products is intended to appeal specifically to owners of dogs that have exhibited allergic or other adverse reactions, which might be alleviated by a premium food, or for dog owners who wish to avoid such reactions. "Grain-Free" diets are often recommended by veterinarians to reduce risks of adverse reactions of dogs to certain ingredients that may be used as filler in lower-priced dog foods.

42.     Plaintiffs and Class Members paid a price premium for dog foods that were purportedly grain-free. Unbeknownst to Plaintiffs and Class Members, the Grain-Free Products were not grain free.

43.     The front and back of Defendants' Grain-Free Products dog food bags include numerous representations that are materially misleading. Images of the front of the bags are reproduced below:

## I. American Journey Grain-Free Lamb & Sweet Potato Recipe







**II.**   <u>American Journey Grain-Free Salmon & Sweet Potato Recipe</u>







### III.    American Journey Grain-Free Beef & Sweet Potato Recipe





46.     The representations that the Limited Ingredient Diets are "Grain-Free and contain: no corn, wheat, soy" appear uniformly and prominently, on the front of every bag of the Grain-Free Products, regardless of the protein within the bag (beef, salmon, or lamb).

47.     Further, the front of each bag of the Grain-Free Products includes the words "GRAIN-FREE" in large, bold type.

48.     There is no product labeling variation between each of the Grain-Free Products listed herein that is pertinent to the allegations in this lawsuit. Rather, the misrepresentations and omissions identified in this complaint are identical across all of the Grain-Free Products. In other words, the misrepresentations and means of deception are the same for all of the Grain-Free Products.

49.     Defendants' representations regarding the ingredients in the Grain-Free Products, as well as the safety of the Grain-Free Products for dogs that may be sensitive or allergic to wheat, are false.

50.     In fact, the Grain-Free Products contain significant amounts of wheat at above trace amounts. Plaintiffs' independent analysis of the ingredients of the Grain-Free Products found that

they contain material amounts of wheat, i.e., amounts above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

51.     Specifically, Plaintiffs' testing found amounts of wheat within the Grain-Free Products that are well above amounts that would be considered cross contamination. The non-conforming ingredient, wheat, found within the Grain-Free Products is material to Plaintiffs, customers, and putative Class Members.

52.     It is undisputed that the Q-PCR method of DNA testing is the industry standard method of testing used to determine whether food complies with FDA standards and other quality standards.

53.     If the presence of an ingredient was due to cross contamination, the amount found within a product would be less than 1%. The amount of wheat found within the Grain-Free Products exceeds that threshold.

54.     Defendants' representations that the Grain-Free Products are "Grain-Free" and contain no corn, wheat or soy were developed with the intent to generate sales of the Products and capture a substantial percentage of the dog food market.

55.     Defendants' uniform, express, and implied representations that the Grain-Free Products are "Grain-Free" and contain no corn, wheat or soy pervades Defendants' labeling and marketing of the Products.

**Defendants' Misrepresentations and Omissions Are Material to Reasonable Consumers**

56.     Although dog foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that are wheat-free, corn-free, or soy-free because certain dog breeds have allergies associated with dog foods containing these ingredients, or because the owners understand that certain ingredients help—or hamper—their dogs' health, weight, and overall wellbeing.

57.     Nothing on the Grain-Free Products packaging gives the reasonable consumer information suggesting that he or she is purchasing a product that contains wheat. In fact, the product packaging leads the reasonable consumer to believe the exact opposite.

16

58.    Wheat is a key ingredient that reasonable consumers often avoid when purchasing dog food, which is exactly why Defendants disclaim its presence on the front of all of the Grain-Free Products' packaging.

59.    Defendants' representations on the Grain-Free Products packaging are designed to induce consumers to believe that the Products are "Grain-Free" and contains no corn, wheat, or soy. These representations are material to consumers and the primary factor motivating consumer purchases of the Grain-Free Products.

60.    It is reasonable for consumers to rely upon Defendants' representations concerning the Grain-Free Products when deciding to purchase the Products. The primary reason that consumers purchase the Grain-Free Products is the desire to receive the advertised benefits of feeding their dogs a food that is "Grain-Free" and contains no corn, wheat, or soy.

61.    When dog owners buy grain-free dog food, they do so to support their dogs' health, prevent a health issue, or address a nutritional deficiency that their dogs may be experiencing. And consumers generally must pay a premium price for specialized dog food formulations, including the Grain-Free Products. In fact, the Grain-Free Products are sold for in excess of $40 for each 24 lb. bag of dog food.

62.    Accordingly, Plaintiffs and Class Members purchased the Grain-Free Products instead of cheaper dog food alternatives—some of which are also marketed by Defendants—that were known to contain wheat.

63.    Defendants' misrepresentations regarding the formulation of the Grain-Free Products drive consumers' purchases.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

64.    Defendants had actual knowledge for years that their representations regarding the Grain-Free Products as being "Grain-Free" and containing no corn, wheat, or soy, were false misrepresentations.

65.     Although Defendants were aware that the above-described Product claims are false and deceptive misrepresentations, they took no steps to disclose the truth to Plaintiffs or Class Members.

66.     As the manufacturers of the Grain-Free Products, Defendants have known since the inception of the Products that the above-described Product claims are false and deceptive misrepresentations.

67.     Despite their knowledge, Defendants have fraudulently concealed the fact that the representations regarding the Grain-Free Products being "Grain-Free" and containing no corn, wheat, or soy are false misrepresentations.

68.     Defendants made affirmative misrepresentations to consumers during the sales of the Grain-Free Products.

69.     Defendants concealed material facts that would have been important to Plaintiffs and Class and Subclass Members in deciding whether to purchase the Grain-Free Products. Defendants' concealment was knowing, and they intended to deceive Plaintiffs and Class and Subclass Members to rely upon it. Accordingly, Plaintiffs and Class and Subclass Members reasonably relied upon Defendants' concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

70.     The falsity of Defendants' misrepresentations was not reasonably detectible to Plaintiffs and Class and Subclass Members.

71.     Defendants actively and intentionally concealed the falsity of their misrepresentations and failed to inform Plaintiffs or Class and Subclass Members of their falsity at all times.  Accordingly, Plaintiffs and Class and Subclass Members' lack of awareness was not attributable to a lack of diligence on their part.

72.     Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Grain-Free Products are not "Grain-Free" and actually contain corn, wheat, or soy.

73.     Defendants concealed the falsity of their misrepresentations for the purpose of delaying Plaintiffs and Class and Subclass Members from filing a complaint on their causes of action.

74.     As a result of Defendants' active concealment of the truth and/or failure to inform Plaintiffs and Class and Subclass Members of the falsity of their misrepresentations, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its active concealment of the falsity of their misrepresentations.

75.     Further, the causes of action alleged herein did not occur until Plaintiffs and Class and Subclass Members discovered that the Grain-Free Products contain material amounts of wheat *i.e.,* in an amount above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing. Plaintiffs and Class and Subclass Members had no realistic ability to determine the falsity of Defendants' misrepresentations.  In either event, Plaintiffs and Class and Subclass Members were hampered in their ability to discover their causes of action because of Defendants' active concealment of the falsity of their representations that the Grain-Free Products are "Grain-Free" and contain no corn, wheat, or soy.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

76.     Although Defendants are in the best position to know what content they placed on their Product packaging and labels, in advertising and marketing materials, and on their website(s) during the relevant timeframe, to the extent necessary, Plaintiffs satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

77.     **WHO**:  Defendants made material misrepresentations and/or omissions of fact through their Product packaging, advertising and marketing, website representations, and warranties, all of which misrepresent that the Grain-Free Products are "Grain-Free" and contain no corn, wheat or soy.

78.    **WHAT**:  Defendants' conduct here was, and continues to be, fraudulent because they omitted and concealed that the Grain-Free Products are not "Grain-Free" and actually contain corn, wheat or soy.

79.    Further, Defendants' conduct deceived Plaintiffs and Class and Subclass Members into believing that the Grain-Free Products are "Grain-Free" and contain no corn, wheat or soy. Defendants knew or should have known that this information is material to reasonable consumers, including Plaintiffs and Class and Subclass Members in making their purchasing decisions, yet they omit any disclosure of the fact that the Grain-Free Products actually contain material amounts of wheat, *i.e.,* an amount above a trace amount by any scientific metric using the industry standard Q-PCR method of DNA testing.

80.    **WHEN**:  The material misrepresentations and/or omissions detailed herein were made prior to and available at the time Plaintiffs and Class and Subclass Members surveyed the field of available dog foods in order to gather information that would aid them in selecting the best product for their dogs, prior to and at the time Plaintiffs and Class and Subclass Members purchased the Grain-Free Products, and continuously throughout the applicable class period.

81.    **WHERE**:  Defendants' material misrepresentations and/or omissions were made on the Product packaging, in advertising and marketing materials, and on their website(s).

82.    **HOW**:  Defendants made misrepresentations and/or failed to disclose material facts regarding the fact that the Grain-Free Products are not "Grain-Free" and actually contain corn, wheat, or soy in written form, electronic form, or conventional hardcopy form.

83.    **WHY**:  Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class and Subclass Members, and all reasonable consumers to purchase and/or pay for the Grain-Free Products, the effect of which was that Defendants profited by selling the Grain-Free Products to many thousands of consumers.

84.    **INJURY**:  Plaintiffs and Class and Subclass Members purchased or paid more for the Grain-Free Products when they otherwise would not have absent Defendants' misrepresentations and/or omissions.  Further, the Grain-Free Products continue to be sold via

material misrepresentations and/or omissions on the product packaging, in advertising and marketing materials, and on Defendants' website(s), causing additional consumers to purchase these products for more than they would be willing to pay if they knew that the Grain-Free Products are not "Grain-Free" and actually contain corn, wheat, or soy.

## CLASS ACTION ALLEGATIONS

### Class Definitions

85.     Plaintiffs brings this action on behalf of themselves and the Members of the following Class:

> During the fullest period allowed by law, all persons residing in the United States who purchased the Grain-Free Products primarily for personal, family, or household purposes, and not for resale.

86.     In addition, or alternatively, Plaintiff Sabater brings this class action on behalf of himself and the Members of the following Subclass ("Florida Subclass")

> During the fullest period allowed by law, all persons residing in the State of Florida who purchased the Grain-Free Products primarily for personal, family, or household purposes, and not for resale.

87.     In addition, or alternatively, Plaintiff Gleitz brings this class action on behalf of himself and the Members of the following Subclass ("Missouri Subclass")

> During the fullest period allowed by law, all persons residing in the State of Missouri who purchased the Grain-Free Products primarily for personal, family, or household purposes, and not for resale.

88.     In addition, or alternatively, Plaintiff Goodrich brings this class action on behalf of herself and the Members of the following Subclass ("Tennessee Subclass")

> During the fullest period allowed by law, all persons residing in the State of Tennessee who purchased the Grain-Free Products primarily for personal, family, or household purposes, and not for resale.

89.     Specifically excluded from these definitions are: (1) Defendants, any entity in which any Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

90.     Plaintiffs reserve the right to amend the Class definition and Subclass definitions as necessary.

91.     **Numerosity**: The Members of the Class and Subclasses are so numerous that joinder of all Members is impracticable. While the exact number of Class and Subclass Members is presently unknown, it consists of thousands of people geographically disbursed throughout the United States, and throughout Florida, Missouri, and Tennessee. The number of Class and Subclass Members can be determined by sales information and other records through discovery. Moreover, joinder of all potential Class and Subclass Members is not practicable given their numbers and geographic diversity. The disposition of the claims of these Class Members and Subclass Members in a single action will provide substantial benefits to all parties and to the Court.

92.     **Typicality**: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members and Subclass Members, purchased the Grain-Free Products that were manufactured, marketed, distributed and sold by Defendants. Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that, *inter alia*, they have incurred or will continue to incur damage due to purchasing a product at a premium price that contained ingredients that Defendants represented were absent from the Grain-Free Products. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and Subclass Members and represent a common thread of deceptive, deliberate, and negligent misconduct resulting in injury to all Class Members and Subclass Members.

93.     **Commonality**: There are numerous questions of law and fact common to Plaintiffs and Class and Subclass Members that predominate over any individual questions. These common legal and factual issues include the following:

    a)      Whether the Grain-Free Products contain wheat;

22

b)    Whether Defendants' representations that their Products contain no wheat, and are "Grain Free" are false, deceptive or misleading;

c)    Whether Defendants expressly warranted that the Grain-Free Products would conform to the representations made on its packaging that the Grain-Free Products contain no wheat and are "Grain-Free";

d)    Whether Defendants impliedly warranted that the Grain-Free Products would conform to the representations that it is a "Grain-Free" product that would pass without objection in the trade under this description and is fit for the ordinary purposes for which such goods are sold;

e)    Whether Defendants breached their warranties by making the representations above;

f)    Whether Defendants were unjustly enriched by making the representations and omissions above;

g)    Whether Defendants' actions, as described above, violated state consumer protection laws as alleged herein;

h)    Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

94.    **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of Class and Subclass Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

95.    **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein including, but not limited to, its misrepresentations that the products are "Grain-Free" and contain "No Wheat," and Defendants have acted and refused to act on grounds that apply generally to the Class and Subclasses, such

that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class and Subclasses as a whole.

96.     **Predominance and Superiority**: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class and Subclass Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. Plaintiffs and Class and Subclass Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class and Subclass Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class and Subclass Members' individual claims, it is likely that few Class and Subclass Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class and Subclass Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Violation of Magnuson-Moss Warranty Act**
**(15 U.S.C. §§ 2301, *et seq.*)**
**(On Behalf of the Proposed Nationwide Class)**

97.     Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

98.     As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiffs' Magnuson-Moss claim.

99.     The Grain-Free Products are "consumer products" as defined in 15 U.S.C. § 2301(1).

100.    Plaintiffs and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3) and utilized the Grain-Free Products for personal and household use and not for resale or commercial purposes.

101.    Plaintiffs purchased the Grain-Free Products costing more than $5.00 and their individual claims are greater than $25.00, as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

102.    Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. §§ 2301(4) and (5).

103.    The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

104.    Plaintiffs incorporate each Plaintiff's state implied warranty claim, as alleged below in the Third Cause of Action, in this claim by reference.

105.    The MMWA provides a cause of action for breach of warranty, including the implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

106.    Defendants have breached their implied warranties of merchantability by failing to provide merchantable goods. The Grain-Free Products at issue are not merchantable or fit for their ordinary purposes because they are purportedly designed and marketed as a "Grain Free" food for owners who choose to avoid feeding their dogs grains, including wheat, yet the Grain-Free Products purchased by Plaintiffs and Class Members do not function accordingly.

107.    Defendants breached their implied warranty of merchantability because the Grain-Free Products did, in fact, contain wheat, and therefore fail to function as a "Grain-Free" product.

108.    In their capacity as warrantor, and by the conduct described herein, any attempt by Defendants to limit the warranties is not permitted by law.

109.    By Defendants' conduct, as described herein, Defendants have failed to comply with their obligations under their implied promises, warranties, and representations.

110.    Plaintiffs and the Class fulfilled their obligations under the implied warranties.

111.    As a result of Defendants' breach of implied warranties, Plaintiffs and the Class are entitled to revoke their acceptance of the Grain-Free Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and Florida, Missouri and Tennessee Subclasses)**

112.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

113.    Defendants marketed, sold, and/or distributed the Grain-Free Products, and Plaintiffs and Class Members purchased the Grain-Free Products.

114.    Defendants uniformly represented their marketing, advertising, and promotion of the Grain-Free Products, including on the Product packaging, that the Products were "Grain-Free" and contained "no wheat."

115.    Defendants made these representations to induce Plaintiffs and Class and Subclass Members to purchase the Grain-Free Products, which did, in fact, induce Plaintiffs and other Class Members to purchase the Grain-Free Products.

116.    Accordingly, Defendants' representations that the Grain-Free Products contained "No Wheat" and were "Grain Free" became part of the basis of the bargain between Defendants and Plaintiffs and other Class and Subclass Members.

117.    The Grain-Free Products did not conform to Defendants' representations and warranties because at all relevant times the bags of the Grain-Free Products contained wheat.

118.    Plaintiffs and each of the Members of the Class and Subclasses have had sufficient direct dealings with either Defendants or one of their agents to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the Members of the Class and Subclasses, on the other hand. Notwithstanding, privity is not required because Plaintiffs and each of the Members of the Class and Subclasses are the intended beneficiaries of Defendants' written

warranties and its relationships with retailers. The retailers were not intended to be the ultimate consumers of the Grain-Free Products.

119.    As a direct and proximate result of Defendants' breaches of their express warranties and their failure to conform to the Grain-Free Products' express representations, Plaintiffs and Members of the Class and Subclasses have been damaged. Plaintiffs and Class Members have suffered damages in that they did not receive the Products they specifically paid for and that Defendants warranted the Products to be. In addition, Plaintiffs and Class Members paid a premium for Products that did not conform to the Defendants' warranties.

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the Proposed Nationwide Class and Florida, Missouri, and Tennessee Subclasses)**

120.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

121.    Defendants provided Plaintiffs and Class Members with implied warranties that the Grain-Free Products were merchantable and fit for the ordinary purposes for which they were sold, i.e., that they were limited ingredient diet dog food products.

122.    Defendants marketed, sold, and/or distributed the Grain-Free Products, and Plaintiffs and other Class Members purchased the Grain-Free Products.

123.    Plaintiffs bring this claim for breach of the implied warranty of merchantability on behalf of themselves and other consumers who purchased the Grain-Free Products as a limited ingredient dog food product for their dogs.

124.    Defendants have breached the implied warranties of merchantability that they made to Plaintiffs and the Class. For example, Defendants impliedly warranted that the Grain-Free Products were free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which limited ingredient dog foods are used.

125.    When sold by Defendants, the Grain-Free Products were not merchantable, did not pass without objection in the trade as a limited ingredient diet for dogs, were not of adequate

quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the Product packaging.

126.    Plaintiffs and each of the Members of the Class and Subclasses have had sufficient direct dealings with either Defendants or one of their agents to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the Members of the Class and Subclasses, on the other hand.  Notwithstanding, privity is not required because Plaintiffs and each of the Members of the Class and Subclasses are the intended beneficiaries of Defendants' written warranties and their relationships with retailers. The retailers were not intended to be the ultimate consumers of the Grain-Free Products.

127.    As a result of Defendants' breaches of implied warranties, Class Members did not receive the benefit of their bargain and suffered damages at the point-of-sale stemming from their overpayment for the Grain-Free Products that contained non-conforming ingredients.

128.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Proposed Nationwide Class)**

129.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

130.    Plaintiffs and Class Members conferred benefits on Defendants by purchasing the Grain-Free Products at a premium price.

131.    Defendants have knowledge of their receipt of such benefits.

132.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Grain-Free Products.

133.     Defendants' retaining these monies under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that the Grain-Free Products contained no wheat, when, in fact, they do contain this non-conforming ingredient.

134.     Defendants' misrepresentations have injured Plaintiffs and Class Members because they would not have purchased (or paid a price premium) for the Grain-Free Products had they known the true facts regarding the Grain-Free Products' ingredients.

135.     Because it is unjust and inequitable for Defendants to retain such non-gratuitous benefits conferred on it by Plaintiffs and Class Members, Defendants must pay restitution to Plaintiffs and Class Members, as ordered by the Court.

### FIFTH CAUSE OF ACTION
**Violation of Florida's Unfair & Deceptive Trade Practices Act
(Fla. Stat. §§ 501.201, *et seq.*)
(On Behalf of the Nationwide Class or alternatively, the Florida Subclass)**

136.     Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

137.     Plaintiffs and Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

138.     Defendants are engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

139.     The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ...." Fla. Stat. § 501.204(1).

140.     The Grain-Free Products are goods within the meaning of FDUTPA.

141.     Defendants designed, manufactured, marketed, sold, distributed, and labeled the Grain-Free Products from their headquarters in Florida.

142.     For the reasons discussed herein, Defendants violated and continue to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §§ 501.201, *et seq.*  Defendants' acts and practices, including their

omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

143.    The offending conduct of the mislabeling of the Grain-Free Products occurred within Florida. Specifically, given Defendants' headquarters are in Florida, the design, marketing, distribution, and other fraudulent contact occurred within Florida.

144.    Hence, all relevant communications made to out-of-state consumers regarding the Grain-Free Products are due to Defendants' conduct that occurred within Florida.

145.    Defendants' representations and omissions concerning the quality, benefits and effectiveness of the Grain-Free Products were false and/or misleading as alleged herein.

146.    Defendants' deceptive or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

147.    Defendants' deceptive and misleading representations and omissions were made to the entire Class, as well as the Florida Subclass, as they were prominently displayed on the packaging of every bag of the Grain-Free Products.

148.    Defendants knew or should have known their representations and omissions were material and were likely to mislead reasonable consumers, including Plaintiffs and the Class (and Florida Subclass).

149.    Defendants' practices, acts, and course of conduct in marketing and selling the Grain-Free Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

150.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised the Grain-Free Products to unwitting consumers.

151.    Defendants' wrongful business practices were a direct and proximate cause of actual harm to Plaintiffs and to each Class Member.

152.    As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiffs and the other Class and Subclass Members have suffered ascertainable losses and actual

damages. Plaintiffs and the other Class Members who purchased the Grain-Free Products would not have purchased them, or, alternatively, would have paid less for them had the truth about the non-conforming ingredients been disclosed. Plaintiffs and the other Class Members did not receive the benefit of the bargain.

153.     Pursuant to Fla. Stat. §§ 501.2105(1)-(2), Plaintiffs, on behalf of the Nationwide Class, or alternatively on behalf of a Florida Subclass, seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the FUDTPA.

## <u>SIXTH CAUSE OF ACTION</u>
### Violation of the Missouri Merchandising Practices Act
### Mo. Ann. Stat. §§ 407.020, *et seq.*
### (On Behalf of the Missouri Subclass)

154.     Plaintiff Gleitz hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-96 into this cause of action and claim for relief as if fully set forth herein.

155.     The Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. § 407.020 (West 2010), provides, in part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice . . .. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

156.     Defendants' representations and omissions concerning the quality, benefits and effectiveness of the Grain-Free Products were false and/or misleading as alleged herein.

157.     Defendants' false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

158.    Defendants' false and misleading representations and omissions were made to the entire Subclass as they were prominently displayed on the packaging of every bag of the Grain-Free Products.

159.    Defendants knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff Gleitz and the Missouri Subclass Members.

160.    Defendants' practices, acts, and course of conduct in marketing and selling the Grain-Free Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

161.    Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised the Grain-Free Products to unwary consumers.

162.    Defendants' wrongful business practices were a direct and proximate cause of actual harm to Plaintiff Gleitz and to each Missouri Subclass Member.

163.    As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff Gleitz and the other Missouri Subclass Members have suffered ascertainable loss and actual damages. Plaintiff Gleitz and the other Missouri Subclass Members who purchased the Grain-Free Products would not have purchased them, or, alternatively, would have paid less for them had the truth about the non-conforming ingredients been disclosed. Plaintiff Gleitz and the Members of the Missouri Subclass are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Missouri law, including Mo. Ann. Stat. § 407.025.

164.    As a result of Defendants' statutory violations, Plaintiff Gleitz and the Missouri Subclass Members sustained injuries and are entitled to relief under the MMPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of a Class of all others similarly situated, seeks entry of an order or judgment against Defendants, as follows:

a.    Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and

naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b.  Declaring that Defendants' conduct violates the statutes referenced herein;

c.  Finding in favor of Plaintiffs and the Class on all counts asserted herein;

d.  Awarding compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.  Awarding pre-judgment interest on all amounts awarded;

f.  Awarding restitution and all other forms of equitable monetary relief;

g.  Awarding injunctive relief as pleaded or as the Court may deem proper; and

h.  Awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs incurred in bringing this lawsuit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 22, 2021.

GREG COLEMAN LAW PC

s/*Rachel Soffin*
Rachel Soffin, FL Bar No. 18054
Jonathan Cohen, FL Bar No. 27620
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile:  (865) 522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

Daniel K. Bryson*
J. Hunter Bryson*
**WHITFIELD BRYSON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile:  (919) 600-5035
Dan@whitfieldbryson.com

Hunter@whitfieldbryson.com

*Pro hac vice* forthcoming

*Attorneys for Plaintiffs and the Putative Class*