**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RICARDO SABATER, on behalf of                    Case No. 0:21-cv-60409-AHS
himself and all others similarly situated,

      Plaintiff,

vs.

AMERICAN JOURNEY (PET), LLC, and
CHEWY, INC.,

      Defendants.
_____/


**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND**
**SUPPORTING MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

     A.    American Journey Products.................................................................................2

     B.    Plaintiff and His Claims. .....................................................................................4

     C.    FDA Regulation of Incidental Additives. ...........................................................7

     D.    Procedural History. .............................................................................................9

ARGUMENT .......................................................................................................................10

I.     Plaintiff Lacks Standing To Challenge Products He Did Not Purchase..........................10

II.    Plaintiff Lacks Standing For Monetary Relief. ..............................................................11

III.   Plaintiff Fails To State Implied or Express Warranty Claims. .......................................16

IV.   Plaintiff Lacks Standing To Seek Injunctive Relief. .....................................................18

CONCLUSION.....................................................................................................................20

CERTIFICATE OF SERVICE .............................................................................................21

**<u>TABLE OF AUTHORITIES</u>**

**FEDERAL CASES**

*Arcure v. Kellogg Co.*, 2011 WL 13294631 (M.D. Fla. Mar. 29, 2011) ....................................17

*Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066 (S.D. Fla. Mar. 20, 2015)...................11, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................15

*Berni v. Barilla S.P.A.*, 964 F.3d 141 (2d Cir. 2020)..................................................19

*Blobner v. R.T.G Furniture Corp.*, 2019 WL 3808130 (M.D. Fla. July 24, 2019) .....................11

*Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015) ...........................11

*Bush v. Well Pet, LLC*, 2021 WL 1408118 (D. Mass. Apr. 14, 2021).................................14, 15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................11

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366 (S.D. Fla. 2015) ..........................................10

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ...........................................................5

*Dixon v. Allergan USA, Inc.*, 2015 WL 13777064 (S.D. Fla. Apr. 2, 2015)......................7, 17, 18

*Doss v. Gen. Mills, Inc.*, 2019 WL 7946028 (S.D. Fla. June 14, 2019)......................................14

*Doss v. Gen. Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020) .........................................12

*Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664 (D.D.C. Nov. 8, 2018) ..................14

*Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1257 (N.D. Fla. 2009).........................................18

*Fishon v. Mars Petcare US, Inc.*, 2020 WL 6826733 (M.D. Tenn. Nov. 20, 2020) ...................13

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167 (2000) ...........................18

*Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ..........14

*Hill v. Hoover Co.*, 899 F. Supp. 2d 1259 (N.D. Fla. 2012) .........................................18

*Holliday v. Albion Lab's, Inc.*, 2015 WL 10857479 (S.D. Fla. June 9, 2015)............................11

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) ....................................18

*In re Monat Hair Care Prods. Litig.*, 2019 WL 5423457 (S.D. Fla. Oct. 23, 2019)....................19

iii

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dept of the Treasury*, 773 F.3d 243 (11th Cir. 2014)..................................................................................................................................11

*Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..................................................... 14, 19

*Mazzeo v. Nature's Bounty, Inc.*, 2014 WL 5846735 (S.D. Fla. Nov. 12, 2014).........18

*McMaster v. United States*, 177 F.3d 936 (11th Cir. 1999) ...........................................11

*McNair v. Synapse Grp., Inc.*, 672 F.3d 213 (3d Cir. 2012) .........................................19

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139.................................................11

*O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538 (S.D. Fla. 1988) ...................18

*Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108 (S.D. Fla. 2019) ...........................17

*Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019)..........................15

*Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ..........................14

*Prado–Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ............................................10

*Prescott v. Nestlé USA, Inc.*, 2020 WL 3035798 (N.D. Cal. June 4, 2020)..................................19

*Reilly v. Amy's Kitchen, Inc.*, 2013 WL 9638985 (S.D. Fla. Dec. 9, 2013)................................11

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)..................................................................................................................................13

*Sanchez-Knutson v. Ford Motor Co.*, 2015 WL 11197772 (S.D. Fla. July 22, 2015).................11

*Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir. 1999) ............................................. 11, 12

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001)...........................................................18

*Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297 (S.D. Fla. 2020) ................. 11, 19

*Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861 (D. Minn. Dec. 22, 2020)...............14

*Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014) ..............................................18

*T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995)..............................18

*Toback v. GNC Holdings, Inc.*, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ...........................11

*Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021) ...................... 10, 11

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014)..................................................14

*Ward v. St. Jude Med., Inc.*, 2016 WL 1208789 (S.D. Fla. Mar. 28, 2016)..................................7

*Wasser v. All Mkt., Inc.*, 329 F.R.D. 464 (S.D. Fla. 2018)...........................................................19

*Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) ..................18

## STATE CASES

*Intergraph Corp. v. Stearman*, 555 So.2d 1282 (Fla. DCA 2d 1990)...........................................17

*Kramer v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988)..........................................................17

*Mesa v. BMW of N. Am., LLC*, 904 So.2d 450 (Fla. DCA 3d 2005) ...........................................17

*Ocana v. Ford Motor Co.*, 992 So.2d 319 (Fla. DCA 3d 2008)....................................................17

*Spolski Gen. Contractor, Inc. v. Jett–Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637
 So.2d 968 (Fla. DCA 5th 1994) ................................................................................................17

*Weiss v. Johansen*, 898 So.2d 1009 (Fla. DCA 4th 2005) ...........................................................17

## OTHER AUTHORITIES

21 C.F.R. § 101.4 ...........................................................................................................................7

21 C.F.R. § 101.91 .........................................................................................................................7

21 C.F.R. § 170.3 ...........................................................................................................................8

21 C.F.R. § 501.4 ......................................................................................................................7, 19

21 C.F.R. § 501.100(a)(3) ...............................................................................................7, 8, 14, 19

38 Fed. Reg. 20704 ........................................................................................................................8

*Exemptions from Food Labeling Requirements*, 38 Fed. Reg. 20704 (1973) ................................7

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ..................................................7

*Food Labeling; Gluten-Free Labeling of Foods*, 78 Fed. Reg. 47154-02 (Aug. 5, 2013) .........7, 8

## INTRODUCTION

Plaintiff Ricardo Sabater is a dog owner who purports to unleash a putative nationwide class action against Chewy, Inc. and its wholly-owned subsidiary American Journey, LLC (collectively "Chewy"). He attacks select American Journey® dog food formulated with grain-free recipes. But, Plaintiff neither questions the nutritional value of the dog food, nor disputes the recipes are grain-free. Instead, Plaintiff's counsel allegedly conducted an "independent analysis" of an unspecified American Journey dog food product that allegedly detected the presence of wheat "above a[n unidentified] trace amount." First Am. Compl. ("FAC") ¶ 4. He does not tie that testing to any bag of dog food he purchased or plausibly plead any harm to his dogs.

Chewy pointed out these deficiencies in its previous motion to dismiss, and Plaintiff responded by seeking a lengthy extension, waiting five weeks, and then moving for leave to amend his complaint to provide "further information regarding Plaintiff's pre-suit testing and test results so that the Court can make a fully-informed decision." ECF 44 at 6. Yet, when he filed his amended complaint, Plaintiff provided *no new information* regarding his "pre-suit testing and test results." *Id.* Plainly, this is core evidence that Plaintiff must produce in order to prosecute this matter. So why the bait-and-switch? The answer is obvious: Plaintiff cannot connect the alleged testing to the bags of dog food he actually purchased.

Nonetheless, Plaintiff continues to assert a putative nationwide class action against Chewy for breach of warranty, and for labels that are purportedly misleading and omissive. His claims are subject to dismissal for numerous reasons. *First*, Plaintiff has no standing to seek damages for products he did not purchase and for products that neither contained wheat, nor plausibly harmed his dogs in any way. Chewy has raised a factual challenge to Plaintiff's standing, and to overcome that challenge, he must respond with evidence, not unsupported allegations and inferences drawn from pleadings. He has failed to do so. *Second*, Plaintiff's warranty claims fail as a matter of law

1

because he is not in privity with Chewy. *Finally*, Plaintiff lacks standing to pursue injunctive relief. There is no danger Plaintiff will purchase American Journey Products in the future, nor could he possibly be deceived by their accurately-labeled "grain-free" recipe.

## BACKGROUND

Chewy is an e-commerce company that has become the most convenient online destination for pet parents. Chewy has developed an easy-to-navigate website and app that allows pet parents to purchase thousands of products, including its American Journey brand pet food. FAC ¶ 8.[1] There are a variety of American Journey recipes, including Grain-Free Lamb & Sweet Potato Recipe and Grain-Free Beef & Sweet Potato Recipe (collectively, "American Journey Products"). The American Journey Products are rated 4.6 and 4.4 out of 5 stars, respectively, are "MADE FOR ALL ADVENTURES," and are overwhelmingly sold through Chewy.com. *See* Decl. of S. Hoffman ("Hoffman Decl.") ¶¶ 5–8 & Ex. A. Over 90% of reviewers recommend the American Journey Products. *Id.* ¶ 8.

### A.      American Journey Products.

"Dog foods vary in their quality of ingredients, formulas, manufacturing processes, and inspection quality." FAC ¶ 26. American Journey Products are manufactured in the United States, use high-quality proteins, wholesome fruits and vegetables, and have numerous advertised benefits. For example, their packaging advertises "Powerful Nutrients." *Id.* p. 9. It also describes American Journey Products as having grain-free recipes, including: (1) "Grain-Free Beef & Potato Recipe" and (2) "Grain-Free Lamb & Sweet Potato Recipe." *Id.* pp. 8–11. Reaffirming that the recipe is grain-free, the packaging indicates the Products are formulated with "NO CORN,

---

[1] Plaintiff alleges American Journey (PET), LLC is a subsidiary of Chewy that "directs the formulation, production, quality control, marketing, sales, and distribution" of American Journey dog food. *See* FAC ¶ 7.

WHEAT, OR SOY." *Id.*

Notably, the packaging does not claim American Journey Products are gluten-free or hypoallergenic, and they say nothing about grain allergies or promise benefits to "dogs that may be sensitive or allergic to wheat." FAC ¶ 36; *see id.* pp. 8–11. Instead, the packaging indicates the recipes for American Journey Products do not include corn, wheat, or soy ingredients, which is true. Hoffman Decl. ¶ 9. The ingredients for each are as follows:

### American Journey Grain-Free Beef & Sweet Potato Grain-Free Recipe

Deboned Beef, Chicken Meal (a source of Glucosamine and Chondroitin Sulfate), Turkey Meal, Peas, Chickpeas, Sweet Potatoes, Dried Plain Beet Pulp, Chicken Fat (Preserved with Mixed Tocopherols), Natural Flavor, Pea Protein, Flaxseed, Salmon Oil, Menhaden Fish Meal, Blueberries, Carrots, Salt, Dried Kelp, Fructooligosaccharides, Dried Bacillus coagulans Fermentation Product, Choline Chloride, Taurine, Vitamin E Supplement, Mixed Tocopherols (Preservative), Ferrous Sulfate, Zinc Proteinate, Zinc Sulfate, Iron Proteinate, Yucca Schidigera Extract, Niacin Supplement, Copper Sulfate, Potassium Chloride, Sodium Selenite, d-Calcium Pantothenate, Copper Proteinate, Riboflavin Supplement, Vitamin A Supplement, Manganese Sulfate, Thiamine Mononitrate, Manganese Proteinate, Pyridoxine Hydrochloride, Vitamin B12 Supplement, Calcium Iodate, Vitamin D3 Supplement, Folic Acid, Rosemary Extract.

### American Journey Grain-Free Lamb & Sweet Potato Grain-Free Recipe

Deboned Lamb, Chicken Meal (a source of Glucosamine and Chondroitin Sulfate), Turkey Meal, Peas, Chickpeas, Sweet Potatoes, Chicken Fat (Preserved with Mixed Tocopherols), Pea Protein, Dried Plain Beet Pulp, Natural Flavor, Flaxseed, Menhaden Fish Meal, Salmon Oil, Blueberries, Carrots, Salt, Dried Bacillus coagulans Fermentation Product, Dried Kelp, Fructooligosaccharides, Choline Chloride, Vitamin E Supplement, Mixed Tocopherols (Preservative), Taurine, Ferrous Sulfate, Zinc Proteinate, Zinc Sulfate, Iron Proteinate, Yucca Schidigera Extract, Niacin Supplement, Copper Sulfate, Potassium Chloride, Sodium Selenite, d-Calcium Pantothenate, Copper Proteinate, Riboflavin Supplement, Manganese Sulfate, Vitamin A Supplement, Manganese Proteinate, Thiamine Mononitrate, Pyridoxine Hydrochloride, Vitamin B12 Supplement, Calcium Iodate, Vitamin D3 Supplement, Folic Acid, Rosemary Extract.

FAC pp. 9 (ingredients lists); Hoffman Decl., Ex. A (same).

Without grain fillers, the recipes allow for high-quality protein ingredients, antioxidant-rich ingredients, essential vitamins, vital minerals, and fruits and vegetables like blueberries,

carrots, sweet potatoes, and dried kelp. *See* FAC pp. 8–11. To that end, the packaging highlights: (1) high-quality proteins "help maintain lean muscles;" (2) DHA (docosahexaenoic acid) "helps support brain and vision development," (3) omega fatty acids "help support a healthy skin and coat;" and (4) antioxidants "help support a healthy immune system." *Id.* Plaintiff acknowledges that consumers choose grain-free recipes because "certain ingredients help . . . their dogs' health, weight, and overall wellbeing," *id.* ¶ 43, and he does not dispute that the recipes of American Journey Products contain such ingredients. He nonetheless alleges grain-free recipes may be attractive to some consumers "because certain dog breeds have allergies associated with dog foods containing these ingredients." *Id.* This allegation is the heart of his lawsuit.

### B.    Plaintiff and His Claims.

Plaintiff is a pet owner who allegedly resides in Florida and purchased American Journey Beef & Sweet Potato Recipe "three times a month from April 2020 to September 2020." FAC ¶¶ 6, 12. Plaintiff purports to bring, *inter alia*, Florida state-law express and implied warranty claims, as well as a violation of Florida's Unfair & Deceptive Trade Practices Act ("FUDTPA"). *See id.* ¶¶ 82–198, 106–123. He claims to have relied on "the 'grain free' and 'no wheat' representations, and other promises made by Defendants on their product packaging." *Id.* ¶ 14. After five months, Plaintiff allegedly took his Doberman Pinschers to the veterinarian because they exhibited "digestive issues and adverse issues with their fur." *Id.* ¶ 16. According to Plaintiff, "[a]fter the visit to the veterinarian and after switching to a Blue Buffalo dog food product, both conditions for both dogs ceased within 2 weeks' time." *Id.* ¶ 16.

Plaintiff claims "[d]ogs can—and often do—have allergic reactions to certain pet foods, including those that contain wheat." FAC ¶ 1. For this reason, Plaintiff allegedly "avoid[ed] purchasing pet foods that include this problematic ingredient." *Id.* He relies on five academic

articles[2]—none of which involve American Journey—and an alleged "independent analysis" to claim American Journey Products contain levels of wheat "above [what he considers to be] a trace amount." *Id.* ¶¶ 4, 37, 62, 66.

Plaintiff alleges that "food allergies are more common among certain dog breeds than others." FAC ¶ 26. He fails to mention, however, that the prevalence of wheat allergies (be it by breed, size, age, or diet) may be non-existent in many breeds and less than 1 per 10,000 dogs overall. He does not (and cannot) allege his own dogs have been diagnosed with a wheat allergy. And he does not (and cannot) allege "above trace" amounts of wheat either existed in the bags of American Journey he purchased, or were even capable of triggering a wheat allergy, as confirmed by his own alleged "independent analysis" and academic research.

The Alleged Independent Analysis. Plaintiff claims the "Q-PCR method of DNA testing" revealed DNA fragments of wheat at levels "above a trace amount." FAC ¶¶ 4, 37–40, 62, 66. Plaintiff provides no further information about this alleged molecular testing. There are no facts about how he established "a trace amount," whether he tested products he purchased, which variety of American Journey Products was tested, which bag or bags were tested, whether there was variance in results, whether the percentage is of the overall product (which contains dozens of ingredients), the actual percentage of wheat allegedly found, whether the levels detected are capable of triggering allergies, or whether any analysis or investigation was done with pets diagnosed with wheat allergies. By contrast, Plaintiff dedicates two pages of his amended complaint to addressing "Academic Research Regarding the Pet Food Industry." *Id.* ¶¶ 19–25.

The Academic Research. Plaintiff relies on five academic articles, but ironically, in a case

---

[2] A court may consider documents attached to the complaint or incorporated by reference on a motion to dismiss. *See Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).

alleging deception, omits all critical conclusions from those articles, including:

- ***Q-PCR DNA Testing Results Do Not Suggest Clinically Significant Amounts of Unintended Ingredients***: "The high degree of sensitivity of [polymerase chain reaction (PCR)] may detect the presence of small amounts of DNA, *but cannot be interpreted as having clinical significance*."[3] "*PCR . . . needs only one molecule for detection*."[4]

- ***Testing a Bag or Lot Does Not Suggest that Other Bags or Lots Have Unintended Ingredients***: "Despite adequate manufacturing processes, *there is always batch-to-batch variation* (including cross-contact of ingredients during processing, storing and shipping which is unavoidable in most pet food production facilities)."[5] "[T]he mislabeling of a specific product cannot be generalized either to the respective producer's previous or future productive lots."[6]

- ***The Presence of Unintended Ingredient Does Not Imply Clinical Reactions***: "Finally—and most importantly—*the presence of an ingredient not included in a pet food's label does not imply that a patient allergic to this particular food source would have a clinical reaction* to this contaminant."[7]

- ***Clinical Reactions to an Unintended Ingredient Is Dog Specific***: "Indeed, an individual's clinical reactivity depends upon a combination of factors including the type of allergen(s) recognized by the patient's immune system, the amount of mislabeled allergen(s) present in the pet food and the degree of hypersensitivity of the patient itself."[8]

- ***Individual Dietary Elimination Testing Is Required***: A dietary elimination test is the "only reliable method to diagnose an [adverse food reaction in pets]."[9] "When an A[dverse] F[ood] R[eaction] is suspected, its diagnosis should always be based on a complete and accurate

---

[3] K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, J. Animal Physiology & Animal Nutrition, Feb. 2017, at 70–74 (FAC ¶ 21, n.2).

[4] Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J. Sci. Food Agric., Mar. 30, 2016, at 1659–65 (FAC ¶ 20 n.1).

[5] K. Kanakubo, *supra* n.3, at 70–74.

[6] Ricci *et al.*, *Undeclared Animal Species in Dry and Wet Novel and Hydrolyzed Protein Diets for Dogs and Cats Detected by Microarray Analysis*, 14 BMC Veterinary Rsch., no. 209, 2018, at 9 (FAC ¶ 22, n.3).

[7] T. Olivry, *et al.*, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, 14 BMC Veterinary Rsch., no. 24, 2018, at 4 (FAC ¶ 24, n.5).

[8] *Id.*

[9] Ricci, *supra* n.6, at 9.

dietary history, clinical signs and, in particular, on the results of a dietary elimination test, i.e., an 'elimination and reintroduction diet.'"[10] "To diagnose an adverse food reaction . . . a lengthy period of dietary restriction is followed by sequential food challenges to identify the culprit food allergen(s)."[11]

### C.      FDA Regulation of Incidental Additives.

The FDA regulates pet food. The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* requires that pet food be safe to eat, produced under sanitary conditions, contain no harmful substances, and be truthfully labeled. *See, e.g.*, 21 C.F.R. § 501.4 (animal food); 21 C.F.R. § 101.4 (human food). Among its many regulations are those for incidental additives.

For example, human food may be labeled "gluten-free," "no gluten," "free of gluten," or "without gluten" if the amount of gluten is below an amount which, based on epidemiological evidence, can be tolerated by most individuals with celiac disease without causing adverse health effects. *See* 21 C.F.R. § 101.91; *Food Labeling; Gluten-Free Labeling of Foods*, 78 Fed. Reg. 47154-02, 47159-60 (Aug. 5, 2013).[12] The FDA anticipated "variability in gluten content of a particular food due to natural variation in ingredients, minor modifications in the food's formulation, [and] changes in other manufacturing practices." *Id.* The FDA separately refused to require a particular test methodology or to certify products as gluten-free. *See id.* at 47169–70.

The FDA has not established standards for incidental wheat levels in grain-free pet foods. The FDA has no epidemiological study for individual dog breeds or dogs in general. As such, the FDA's general incidental-additive regulations govern. *See* 21 C.F.R. § 501.100(a)(3); *Exemptions from Food Labeling Requirements*, 38 Fed. Reg. 20704, 20705 (1973). These regulations not only

---

[10] Pagani *et al.*, *Cross-contamination in Canine and Feline Dietetic Limited-Antigen Wet Diets*, 14 BMC Veterinary Rsch., no. 283, 2018, at 1 (FAC ¶ 23, n.4).

[11] T. Olivry, *supra* n.7, at 2.

[12] It is well-settled that the Court can take judicial notice of FDA regulations and official publications. *See, e.g.*, *Ward v. St. Jude Med., Inc.*, 2016 WL 1208789, at *1 (S.D. Fla. Mar. 28, 2016); *Dixon v. Allergan USA, Inc.*, 2015 WL 13777064, at *2 (S.D. Fla. Apr. 2, 2015).

anticipate, but exempt from disclosure "[i]ncidental additives" "present in a food at insignificant levels [that] do not have any technical or functional effect in that food." 21 C.F.R. § 501.100(a)(3). The FDA has identified over 30 technical or functional effects including anticaking agents, antioxidants, drying agents, flavor enhancers, nutritive sweeteners, stabilizers, and texturizers. *See*, *e.g.*, 21 C.F.R. § 170.3(o)(1)–(32). Here, Plaintiff does not (and cannot) allege the unintended wheat he claims is present in American Journey Products has technical or functional effect.

Underlying the FDA's standard is its recognition that there "may be no feasible way to determine whether nonfunctional trace amounts of some particular substances remain in particular lots of a finished food." 38 Fed. Reg. 20704, at 20705. Plaintiff does not allege molecular DNA testing of individual bags or lots is required. Moreover, the FDA recognizes that label declarations for incidental additives "would be false and misleading for those lots which do not contain any remaining traces of such incidental substances." *Id.* "[T]o require lengthy listings of such substances might cause consumers to give undue attention to the essentially meaningless compilations resulting in deception and unfair competition from competing products." *Id.*

The FDA has similarly rejected the notion that manufacturers cannot market the absence of allergen ingredients from their product formulations due to incidental additives. *See*, *e.g.*, *Food Labeling*; *Gluten-Free Labeling of Foods*, 78 Fed. Reg. 47154-02, 47160-61 (Aug. 5, 2013). For example, requiring manufacturers of gluten-free foods to disclose incidental amounts of gluten "would discourage manufacturers from marketing foods with a 'gluten-free' label, and this, in turn, would limit the availability and variety of gluten-free foods." *Id.* at 47161. Consumers "appreciate and use 'gluten-free' labeling claims to identify packaged foods." *Id.* at 47157. The alternative is for consumers to spend time "reading often lengthy and complicated ingredients lists," *id.*, which, under FDA regulations would not identify the incidental additives.

### D. Procedural History.

Chewy moved to dismiss Plaintiff's complaint on May 4, 2021 (ECF No. 27) ("First Motion to Dismiss"). Chewy identified numerous pleading deficiencies and raised a factual challenge to Plaintiff's Article III standing because Plaintiff did not, and could not, adduce evidence to show an "injury in fact" "fairly traceable" to the bags of "Grain-Free Beef & Sweet Potato Recipe" he allegedly purchased. *See id.* at 11–16. Plaintiff's counsel requested a 30-day extension to respond to that challenge. More than five weeks later, and only 4 business days before Plaintiff's opposition was due, Plaintiff's counsel informed undersigned counsel that Plaintiff would amend the complaint to add information about the alleged testing performed on Chewy's products. The next day, Plaintiff sought leave to amend his complaint arguing an amendment was necessary "*to provide additional details about Plaintiffs' pre-suit testing of the Grain-Free Products*." ECF 44 at 5 (emphasis added). According to Plaintiff, "[s]ince Defendants' Motion to Dismiss casts doubt as to the legitimacy of [his] testing claims, the inclusion of further information regarding [his] pre-suit testing and test results *is necessary* so that the Court can make a fully-informed decision regarding Defendants' Motion to Dismiss." *Id.* at 5–6 (emphasis added).

This Court permitted Plaintiff to amend his complaint. *See* ECF 54. The Court observed on its face, the FAC sufficiently alleged Plaintiff "would not have otherwise purchased the grain-free products at issue." *Id.* at 4. The Court did not address Chewy's *factual* challenge to standing, or any additional arguments raised in Chewy's First Motion to Dismiss.

Plaintiff filed his FAC on July 2, 2021. Contrary to representations made to counsel and the Court, however, the FAC does not contain *any* new allegations or information regarding product testing. The FAC contains only one additional factual allegation regarding Plaintiff—that he "has an intention to purchase the Grain-Free Products in the future." FAC ¶ 18. It has now been months since Chewy filed its First Motion to Dismiss, and Plaintiff has yet to allege facts or

produce *any* evidence to meet a factual challenge to his lack of standing. Plaintiff did not attach the results of the product testing he allegedly performed, identify the bag(s) of product he tested, allege that they are the bags he purchased and fed his dogs, or provide anything that links the alleged pre-suit testing to the dog food he purchased. His claims should be dismissed.[13]

## ARGUMENT

### I.  Plaintiff Lacks Standing To Challenge Products He Did Not Purchase.

Plaintiff allegedly purchased only a single variety of American Journey Products: "[T]he Beef & Sweet Potato Recipe." FAC ¶ 12. Yet he seeks to represent all persons in the United States that purchased not only the Beef & Sweet Potato Recipe, but also American Journey Grain-Free Lamb & Sweet Potato Recipe. *See id.* ¶ 72. That is improper.

"[A]t least one named class representative [must have] Article III standing to raise each class [claim or] subclaim." *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Article III standing requires an "injury in fact." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021). A plaintiff "cannot conceivably allege any injuries from products that he never purchased or used." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Because Plaintiff did not purchase American Journey Lamb & Sweet Potato products, he has not suffered an injury in fact from these products. American Journey Products have different recipes and different ingredients. *See* Hoffman Decl., Ex. A. Plaintiff does not, and cannot plausibly, allege that they are manufactured in the same way, at the same time, on the same lines, or in the same locations.

As such, Plaintiff lacks standing to bring claims regarding American Journey products he

---

[13] The FAC also dropped all claims brought by former plaintiffs Paul Gleitz and Elle Goodrich, who purchased products on Chewy.com—where the overwhelming majority of American Journey products are sold, ECF 28-1 ¶ 6—and therefore repeatedly agreed to Chewy.com's Terms of Use, which require individual arbitration of any such claims.

did not purchase. *See, e.g.*, *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1303 (S.D. Fla. 2020) (no standing to sue for products plaintiffs did not purchase); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) (same); *Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015) (same); *Blobner v. R.T.G Furniture Corp.*, 2019 WL 3808130, at *4 (M.D. Fla. July 24, 2019) (same): *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (same); *Sanchez-Knutson v. Ford Motor Co.*, 2015 WL 11197772, at *5 (S.D. Fla. July 22, 2015); *Holliday v. Albion Lab's, Inc.*, 2015 WL 10857479, at *5 (S.D. Fla. June 9, 2015) (same); *Reilly v. Amy's Kitchen, Inc.*, 2013 WL 9638985, at *2 (S.D. Fla. Dec. 9, 2013); *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) (same).

## II.    Plaintiff Lacks Standing For Monetary Relief.

Standing is a threshold issue. *See Kawa Orthodontics, LLP v. Sec'y, U.S. Dept of the Treasury*, 773 F.3d 243, 245 (11th Cir. 2014). Article III requires "an injury [to] be concrete, particularized, and actual or imminent," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010), and that any alleged injury must be "fairly traceable to the challenged conduct," *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021). "[M]ere speculation" that an injury did or might occur "cannot satisfy the requirement that any injury in fact must be fairly traceable to" the alleged source. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013).

On a motion to dismiss, a defendant may make a factual—as opposed to facial—attack on a plaintiff's standing. *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). Facial attacks challenge standing based on plaintiff's failure to allege facts that "'plausibly' demonstrate each element." *Tsao*, 986 F.3d at 1337. Factual attacks, in contrast, challenge the existence of standing in fact, and in such cases "*no presumptive truthfulness attaches to plaintiff's allegations*." *Scarfo*, 175 F.3d at 960; *see also McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) (emphasis

11

added). In a factual attack, "matters outside the pleadings, such as testimony and affidavits, are considered," and "the court is free to weigh the evidence." *Scarfo*, 175 F.3d at 960.

Here, Plaintiff cannot establish an "injury in fact" "fairly traceable" to the bags of "Grain-Free Beef & Sweet Potato Recipe" he allegedly purchased. *See* FAC ¶ 12. He claims he did not receive the benefit of a grain-free recipe because a molecular DNA analysis of an unidentified bag of an unspecified variety of American Journey Products revealed wheat "at above a trace amount." *Id*. ¶¶ 37–38. He offers no definition of "trace amount," nor quantifies the amount "above trace." He instead claims that after five months of feeding his Doberman Pinschers the Beef & Sweet Potato Recipe, they "had digestive issues and adverse issues with their fur," which resolved after he paid a veterinarian $150 and switched "to a Blue Buffalo dog food product." *Id.* ¶ 16. Such allegations, even if proven, would fail to establish standing as a factual matter, and Plaintiff has not even adduced the evidence that he alleges proves these allegations.

*First*, Plaintiff cannot establish the dog food he fed his dogs contained wheat. He alleges only that an "independent analysis" was performed, not that the analysis was performed *on any bag of pet food Plaintiff purchased and fed his dogs*. Nor does Plaintiff allege any fact connecting the bag or bags he purchased to his "independent analysis." For example, he does not allege American Journey Products are composed with wheat or that Chewy intentionally adds wheat to its products. It does not. *See* Hoffman Decl. ¶ 10. And, he does not allege the testing was performed on other bags from the same lot(s), manufactured in the same facilities, manufactured near the same time, or even on Grain-Free Beef & Sweet Potato Recipe—the only variety he allegedly purchased. FAC ¶ 12. There are no details about the date of the analysis, the source of the sample, or anything else to connect the "analysis" to Plaintiff or his dogs. *See, e.g.*, *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (no standing to sue for glyphosate in Cheerios where

plaintiff "ha[d] not alleged that she purchased any boxes of Cheerios that contained *any* glyphosate, much less a level of glyphosate that is so harmful the Cheerios are 'presumptively unsafe'").

To the contrary, Plaintiff's own academic research confirms that "[d]espite adequate manufacturing processes, there is always batch-to-batch variation (including cross-contact of ingredients during processing, storing and shipping which is unavoidable in most pet food production facilities)."[14] "The [alleged] mislabeling of a specific product cannot be generalized either to the respective producer's previous or future productive lots."[15] That is borne out as a matter of fact: ingredients for American Journey Products come from more than 40 different suppliers in 25 different countries. Hoffman Decl. ¶ 13. They are sourced from multiple suppliers or countries, and suppliers and countries change. *Id.* The ingredients are transported through various means, and they are stored in various ways, after various amounts of processing. *Id.* ¶ 15. Within any given manufacturing facility, American Journey Products are manufactured in varying lot sizes, at different times, with different run times, volumes, and with batch-to-batch variation. *Id.* ¶ 16. In other words, simply alleging that an above-trace-amount of wheat was detected in an unidentified bag or an unspecified variety of American Journey brand product does not suggest any wheat, let alone an amount "above trace," was present in the specific bags purchased by Plaintiff.[16]

It would be "pure speculation to say the particular [bags of American Journey Products]

---

[14] K. Kanakubo, *supra* n.3, at 70–74.

[15] Ricci, *supra* n.6, at 9.

[16] Plaintiff may cite *Fishon v. Mars Petcare US, Inc.*, 2020 WL 6826733, at *3–5 (M.D. Tenn. Nov. 20, 2020); and *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *6–7 (N.D. Cal. Mar. 16, 2020), but those courts did address *factual* attacks on standing, or the other standing arguments made herein.

sold to [Plaintiff] were tainted by [wheat]" or that any bags other than the bag Plaintiff allegedly tested was so contaminated. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1031 (8th Cir. 2014); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861, at *6 (D. Minn. Dec. 22, 2020) (dismissing claims where "plaintiffs have not alleged that all bags of Champion dog food have contained BPA," and "plaintiffs have not alleged that they personally purchased dog food that contained BPA"); *Pels v. Keurig Dr. Pepper, Inc.,* 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels."); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well."); *Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) (rejecting reliance on study to infer that particular bottle of product was mislabeled because of methodological, temporal, and geographic assumptions required).

*Second,* Plaintiff cannot allege the so-called above-trace amount of wheat allegedly detected by his "independent analysis" would be enough to trigger a wheat allergy in *any* dog, let alone his Doberman Pinschers. *See Doss v. Gen. Mills, Inc.*, 2019 WL 7946028, at *3 (S.D. Fla. June 14, 2019) ("Mere conjecture that something has the potential to be harmful is not enough."). He does not (and cannot) allege that wheat had "any technical or functional effect" in American Journey Products. 21 C.F.R. § 501.100(a)(3). He does not (and cannot) claim the presence of mere "trace" amounts of wheat are problematic. *See Bush v. Well Pet, LLC*, 2021 WL 1408118, at *3 (D. Mass. Apr. 14, 2021) ("Gluten can find its way into a product by any number of paths. . . . A

reasonable consumer therefore would not be so 'absolutist' as to require a 'grain free' product to contain no gluten, however negligible the amount actually present."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (dismissing consumer fraud claim because, *inter alia*, "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products").

Instead, he criticizes American Journey Products *only* for allegedly having levels of wheat "*above* a trace amount." FAC ¶¶ 4, 37–40, 62, 66 (emphasis added). But Plaintiff does not (and cannot) allege he was deprived the benefits of a grain-free recipe. He does not specify what "above trace" means, or disclose what quantity he actually detected, other than to allege it was "material." *Id.* ¶ 37. A mere conclusory allegation that an amount is "material" is not entitled to the presumption of truth. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Bush*, 2021 WL 1408118, at *3 (alleging "significant" amount of gluten does not allow court to *"reasonably make an inference"* of a "high level"; "Is a significant gluten content 3 parts per million in every product tested (*i.e.*, a statistically significant trace level of gluten)? Or is it 10,000 parts per million in some of the products (*i.e.*, significantly large level of gluten)?"). Plaintiff alleges no standard or study of any dog breed suggesting so-called "above trace" amounts of wheat are capable of triggering allergic reactions in dogs. To the contrary, Plaintiff alleges testing using the Q-PCR method, but as his own literature explains, "PCR . . . needs only one molecule for detection,"[17] and "[t]he high degree of sensitivity . . . cannot be interpreted as having clinical significance."[18] Thus, "the presence of an ingredient not included in a pet food's label does not imply that a patient allergic to this particular food source would have a clinical reaction to this contaminant."[19]

---

[17] Ming-Kun Hsieh, *supra* n.4, at 1659–65.

[18] K. Kanakubo, *supra* n.3, at 70–74.

[19] T. Olivry, *supra* n.7, at 4.

*Third,* Plaintiff cannot establish his Doberman Pinschers have a wheat allergy or they had an adverse food reaction triggered by wheat. Plaintiff does not claim his dogs are allergic to wheat. He does not allege wheat sensitivities are common in Doberman Pinschers (they are not) or that a veterinarian diagnosed his dogs with a wheat allergy or adverse reaction to wheat. Rather, Plaintiff's own scientific research confirms that a dietary elimination test is the "only reliable method to diagnose an [adverse food reaction in pets]."[20] That is, "[t]o diagnose an adverse food reaction (i.e. food allergy) . . . , a lengthy period of dietary restriction is followed by sequential food challenges to identify the culprit food allergen(s)."[21] Plaintiff does not allege any such test (or any testing at all) was performed on his dogs. Instead, he asks this court to infer his dogs have wheat sensitivity because after five months of eating American Journey Grain-Free Beef & Sweet Potato Recipe, his dogs exhibited digestive and fur issues, which subsided when he switched dog foods. But, Plaintiff does nothing to link these alleged issues to wheat.

Plaintiff has known about all of these deficiencies for months, because Chewy identified all of them in its First Motion to Dismiss. He has had ample time to gather and plead whatever responsive evidence he may have, and he expressly recognized the need to do so: he sought the Court's permission to amend his complaint to address these very issues. Yet, his FAC contains no new allegations or evidence responsive to these deficiencies. He did not bother to submit the results of the testing on which he purports to rely. If the evidence supported his standing to bring this action, he undoubtedly would have done so.

## III.    Plaintiff Fails To State Implied or Express Warranty Claims.

Plaintiff fails to state warranty claims as he lacks privity. Plaintiff seeks alleged economic

---

[20] Ricci, *supra* n.6, at 9.

[21] T. Olivry, *supra* n.7, at 2.

losses for breach of warranty. *See* FAC ¶¶ 89, 98. He claims to have purchased "the Beef & Sweet Potato Recipe from PetSmart in Springhill, Florida," not Chewy. *Id.* ¶ 12. But, "[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." *Dixon v. Allergan USA, Inc.*, 2015 WL 13777064, at *2 (S.D. Fla. Apr. 2, 2015). Lack of privity is fatal to Plaintiff's implied and express warranty claims.

*First*, it is well-settled that, "[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. DCA 3d 2005). "Time and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant." *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019); *see also Arcure v. Kellogg Co.*, 2011 WL 13294631, at *4–5 (M.D. Fla. Mar. 29, 2011) (dismissing implied warranty claim for lack of privity); *Ocana v. Ford Motor Co.*, 992 So.2d 319, 325 (Fla. DCA 3d 2008) (same); *Spolski Gen. Contractor, Inc. v. Jett–Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So.2d 968, 970 (Fla. DCA 5th 1994) (same); *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37, 38–39 (Fla. 1988) (Florida law requires privity for breach of implied warranty claim).

*Second*, lack of privity is equally fatal to Plaintiff's express warranty claim. Florida courts and federal courts within the Eleventh Circuit repeatedly have held that a claim for breach of express warranty requires privity of contract. *See Intergraph Corp. v. Stearman*, 555 So.2d 1282, 1283 (Fla. DCA 2d 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *see also Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. DCA 4th 2005) ("[T]o recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); *Spolski*, 637 So.2d at 970

(same); *Dixon v. Allergan USA, Inc.*, 2015 WL 13777064, at *2 (S.D. Fla. Apr. 2, 2015) (dismissing express warranty claim for lack of privity); *Mazzeo v. Nature's Bounty, Inc.*, 2014 WL 5846735, at *2 (S.D. Fla. Nov. 12, 2014) (same); *Witt v. Howmedica Osteonics Corp.*, 2013 WL 6858395, at *3 (S.D. Fla. Dec. 30, 2013) (same); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1265–67 (N.D. Fla. 2012) (dismissing warranty claim brought by consumer who purchased product from retailer, rather than manufacturer); *Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) (same); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (same); *O'Connor v. Kawasaki Motors Corp., U.S.A.*, 699 F. Supp. 1538, 1543–44 (S.D. Fla. 1988) (same).

## IV.     Plaintiff Lacks Standing To Seek Injunctive Relief.

Entitlement to injunctive relief requires proof of not only injury in fact, but also that a favorable decision will redress the injury. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Plaintiff cannot establish either requirement. *First*, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (internal quotation marks omitted). A past injury alone is insufficient. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[Injunctions] do not provide relief for past injuries"). Thus, Plaintiff lacks standing to seek injunctive relief unless he can show he will suffer the same injury in the future. *See*, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 184 (2000).

Plaintiff has not done so here. He concedes he avoids purchasing pet foods with wheat, has stopped purchasing American Journey Products, and he "would have not purchased (or paid a price premium) for the [American Journey] Products." FAC ¶ 104; *see also id.* ¶¶ 1, 17. Although he contends he has "an intention to purchase [the products] in the future," he concedes that is only

if they are not "labeled as 'Grain-Free[]' *and are actually grain-free*." FAC ¶ 18 (emphasis added). Plaintiff, however, alleges the American Journey Products are *not* grain-free, and nothing about this lawsuit will change that. At most, an injunction in this case would simply require Chewy to change its labels. The composition of American Journey Products would remain the same, Plaintiff (according to his own allegations) would know that those products contain wheat, and, accordingly, Plaintiff still would not purchase them. Such knowledge precludes standing to seek injunctive relief. *See, e.g.*, *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147–49 (2d Cir. 2020); *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 224–26 (3d Cir. 2012); *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020); *In re Monat Hair Care Prods. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *11 (S.D. Fla. Mar. 20, 2015); *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 470–71 (S.D. Fla. 2018).

*Second*, a plaintiff establishes redressability only where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). The Court cannot order Chewy to manufacture American Journey Products using particular methods or in a particular way. *See, e.g.*, *Prescott v. Nestlé USA, Inc.*, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) ("[T]he Court lacks authority to compel Nestlé to make any particular product by way of an injunction."). And, an order merely requiring Chewy to remove references to its grain-free recipes would accomplish nothing. Preemptive federal law would still require Chewy to identify the ingredients used in its recipes. 21 C.F.R. § 501.4(a) (ingredients "shall be listed by common or usual name in descending order of predominance"). That law would require Chewy to identify only those ingredients that have technical or functional effect. *See* 21 C.F.R. § 501.100(a)(3). Thus, a consumer looking for a grain-free recipe would be left to read the ingredient list which, in turn, confirms American Journey

Products have grain-free ingredients and a grain-free recipe.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's claims.

DATED: August 5, 2021

By:   */s/ Jay B. Shapiro*
Jay B. Shapiro
Fla. Bar No.: 776361
Samuel O. Patmore
Fla. Bar No.: 96432
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3229
Facsimile: (305) 789-2664
jshapiro@stearnsweaver.com
spatmore@stearnsweaver.com

David A. Forkner (*Pro Hac Vice*)
David M. Horniak (*Pro Hac Vice*)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
dforkner@wc.com
dhorniak@wc.com

***Counsel for Defendants American Journey, LLC and Chewy, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of August, 2021, I electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which sent a notice of electronic filing to all counsel of record.


By: <u>*/s/ Jay B. Shapiro*</u>
Jay B. Shapiro